IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Barry Patterson, ) | |
| ) | Civil Action No. 6:07-3565-HFF-WMC |
| Plaintiff, ) | |
| ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. ) | |
| ) | |
| Sgt. April Abney, ) | |
| ) | |
| Defendant. ) | |
| ) | |

This matter is before the court on the defendant's motion for summary judgment. The plaintiff, who is proceeding *pro se*, filed this action pursuant to Title 42, United States Code, Section 1983, claiming that his constitutional rights were violated by the defendant while he was a detainee at the Greenwood County Detention Center ("GCDC").

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit findings and recommendations to the District Court.

On March 5, 2008, the defendant filed a motion for summary judgment. By order filed March 6, 2008, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. On April 3, 2008, the plaintiff filed his opposition to the motion for summary judgment.

**FACTS PRESENTED**

The plaintiff was incarcerated at the GCDC on charges of shoplifting on August 6, 2005. At the time of his arrest, the plaintiff did not have identification, and he gave

the officers a false name. As a result, he was booked into the detention center under the name of Barry Robinson. The plaintiff asserts that on September 17, 2005, he was involved in an incident with officers employed by the Sheriff of Greenwood County at the GCDC, and he was shot by a taser by defendant Sergeant April Abney. As a result of this incident, the plaintiff claims defendant Abney violated his constitutional right to be free from excessive use of force. The plaintiff further alleges that he was denied medical care after this incident.

When the plaintiff was booked into the GCDC, he was placed in the F Unit, an open unit for inmates with minor offenses. He was involved in a disturbance on September 1, 2005, and at that time all the inmates in the F Unit were placed in the C Unit, which is a lockdown unit, for failing to follow the rules of the institution and having contraband. The inmates from F unit were placed in lockdown for 30 days, with a review to be made after 15 days. After 15 days, it was determined that the plaintiff could be moved to B Unit, which is a lower security level than C Unit (Linda Butler aff. ¶¶ 5-8).

The plaintiff was moved to B Unit on September 17, 2005. The plaintiff claims he did not want to go to B Unit because he did not get along with other inmates in that unit (Butler aff. ¶ 9). On that date, the plaintiff approached Officer Mitzi Woody in a loud and threatening manner, and refused to go back to his cell (Mitzi Woody aff. ¶ 5). When the plaintiff continued to refuse to comply with Officer Woody's orders and crossed over the blue line toward her, which is considered an aggressive action, she called for back-up (*id.* ¶¶ 6-8). Officer Chris Rooney responded and found the plaintiff wrapped around the railing that kept inmates from falling from the second level down to the first level and refusing to go back to his cell (Chris Rooney aff. ¶ 9; Woody aff. ¶¶ 8-9). Officer Rooney tried to get the plaintiff to let go of the railing, but the plaintiff refused (Rooney aff. ¶ 10). Officer Rooney then asked Officer Woody to call for back-up, and Sergeant Abney, who was the shift supervisor, and Captain Ralph Evans of the Greenwood County Sheriff's Office responded to the call for back-up (Rooney aff. ¶ 11; Woody aff. ¶ 10).

2

When Sergeant Abney arrived, she found the plaintiff holding on to the railing, acting in a confrontational manner, and refusing to obey any commands from the officers (Abney aff. ¶ 7; Rooney aff. ¶¶ 12-13; Woody aff. ¶ 11; Evans aff. ¶¶ 5-8). Sergeant Abney was concerned the plaintiff might try to jump and harm himself or others (Abney aff. ¶ 7). As a result, Sergeant Abney ordered the plaintiff to let go of the railing and return to his cell (Abney aff. ¶ 8). After repeated commands by all officers to comply, Sergeant Abney told the plaintiff she would shoot him with the taser (Abney aff. ¶¶ 9-10; Rooney aff. ¶ 14; Woody aff. ¶ 12; Evans aff. ¶ 9). After the third time the plaintiff was advised to let go of the railing, he turned toward the rail as if he were going to jump (Abney aff. ¶ 11; Rooney aff. ¶ 15; Woody aff. ¶ 13; Evans aff. ¶ 11; pl. complaint at 3, the plaintiff admits he turned his back on Sergeant Abney before he was shot with the taser).

Sergeant Abney believed the plaintiff was a possible threat to himself, the other officers, and other inmates, and believed the use of the taser was the least amount of force necessary to bring the plaintiff into compliance and protect everyone involved (Abeny aff. ¶¶ 12, 15). As a result, defendant Abney shot the plaintiff with the taser, which caused him to let go of the railing (Abney aff. ¶ 12). According to Officer Rooney, he handcuffed the plaintiff after he was shot with the taser (Rooney aff. ¶ 16). The plaintiff claims he was already handcuffed when he was shot with the taser (pl. complaint at 3). Officer Woody does not remember whether the plaintiff was handcuffed before or after he was shot with the taser (Woody aff. ¶ 15). According to the witnesses, the plaintiff did not appear to be injured, did not request medical assistance, and was then escorted back to his cell (Abney aff. ¶¶ 13,17; Rooney aff. ¶ 16; Woody aff. ¶¶ 14,16; Evans aff. ¶ 14). These officers had no other involvement with the plaintiff.

The plaintiff filed a grievance related to this incident on September 17, 2005. Lieutenant Linda Butler received the grievance on September 22, 2005, and referred the plaintiff to medical on that date. A nurse went to his cell and found nothing wrong with the

plaintiff at that time (Butler aff. ¶ 15). According to Lieutenant Butler, whether the plaintiff was handcuffed before or after he was shot with the taser, Sergeant Abney followed policy and training in using the taser as it was the least amount of force to bring him into compliance without causing harm to the plaintiff, officers, or other inmates (*id.* ¶ 16).

The medical care of inmates at the GCDC is handled by a contract with an outside company. According to the plaintiff's medical records, he was seen in medical on a couple of occasions after this incident. On October 2, 2005, he complained of back pain. The medical staff noted that examination revealed no abnormal findings. The plaintiff was given ibuprofen. The medical notes also show that the plaintiff had been observed bending and throwing towels and uniforms without difficulty. On October 21, 2005, he was again seen in medical complaining of back pain when getting up in the morning and at night (*id.* ¶ 18, ex. C).

## **APPLICABLE LAW**

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine

issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248. Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must provide existence of every element essential to his action which he bears the burden of adducing at a trial on the merits.

## ANALYSIS

### *Excessive Force*

In *Riley v. Dorton*, 115 F.3d 1159, 1166 (4th Cir. 1997), the Fourth Circuit Court of Appeals concluded that the excessive force claims of pretrial detainees are governed by the Due Process Clause of the Fourteenth Amendment. The proper analysis under the Fourteenth Amendment is "whether the force applied was 'in a good faith effort to maintain

or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" *Taylor v. McDuffie*, 155 F.3d 479, 483 (4th Cir. 1998). The court can consider several factors when "determining whether prison officials acted maliciously and sadistically: 1) the need for the application of force; 2) the relationship between the need and the amount of force used; 3) the threat reasonably perceived by the officials and 4) the efforts made to temper the severity of a forceful response." *Tate v. Anderson*, C.A. No. 8:05-3085-HMH-BHH, 2007 WL 28982, *3 (D.S.C. 2007 (citing *Williams v. Benjamin*, 77 F.3d 756, 762 (4th Cir. 1996)).

Here, the evidence shows that the force applied was necessitated by the plaintiff's actions, and the officers' actions were a good faith effort to restore discipline. The affidavits of all witnesses indicate that the plaintiff was refusing to follow the orders of the officers, was belligerent, and appeared to be trying to harm himself or others. Therefore, the first element weighs in favor of a use of force. Secondly, the amount of force used was very low on the continuum of force (Evans aff. ¶ 10; Butler aff. ¶ 14). Defendant Abney testified that she was concerned that the plaintiff might try to jump off the railing, possibly injuring himself, inmates below, or officers trying to control him (Abney aff. ¶ 7). As a result, there was clearly a need for force, and the force used was very minor.[1] Third, it was reasonable for all of the officers involved to believe that the plaintiff was a threat as he had already crossed over the blue line, which is a clear violation of detention center policy. Moreover, when the inmate continued to wrap himself around the railing, refused to obey officer commands, and acted aggressively toward the officers, it was reasonable to think there needed to be force to control this inmate. Finally, the officers clearly tried to temper the use of force by making multiple commands to the plaintiff to comply. In fact, defendant Abney

---

[1] The officers testified in their affidavits that the use of mace, which is similar to the taser in the force continuum, would not have been appropriate in this case as mace could possibly disable the other officers trying to gain control of the plaintiff, and mace would simply disable the plaintiff's eyes leaving him able to use his hands against the officers or jump over the railing (Rooney aff. ¶ 17; Abney aff. ¶ 14).

6

even gave the plaintiff three warnings that she was going to shoot him with the taser if he did not comply.  Based upon the foregoing, it is clear that the force applied by defendant Abney was a good faith effort to restore order.

In *Norman v. Taylor*, 25 F.3d 1259, 1263 (4th Cir. 1994) (en banc), the court held that "absent the most extraordinary circumstances, a plaintiff cannot prevail on an Eighth Amendment excessive force claim if his injury is *de minimis*."  Further, "extraordinary circumstances are present when 'the force used [is] of a sort repugnant to the conscience of mankind … or the pain itself [is] such that it can properly be said to constitute more than *de minimis* injury.'"  *Taylor*, 155 F.3d at 483-84 (citing *Norman*, 25 F.3d at 1263 n. 4).  Importantly, in *Riley*, the court extended the holding of *Norman* to excessive force claims brought by pretrial detainees.  *Riley*, 115 F.3d at 1166.  Here, the plaintiff's injuries, as evidenced by the medical records, were no more than *de minimis* in nature.  *See Taylor*, 155 F.3d at 484 ("temporary swelling and irritation is precisely the type of injury this Court considers *de minimis*."); *Stanley v. Hejirika*, 134 F.3d 629, 637-38 (4th Cir. 1998) ("bruising of his right arm, left jaw, left and right wrists and back, and a tooth which was loosened" constituted *de minimis* injury); *Henderson v. Gordineer*, C.A. No. 3:06-1425-TLW-JRM, 2007 WL 840273, **7-8 (D.S.C. 2007) (finding that there was no indication the plaintiff suffered anything more than *de minimis* injury as a result of being shot with taser).  Based upon the foregoing, the excessive force claim fails.

***Medical Care***

The plaintiff claims that he was denied appropriate medical care after the taser incident.  "The Fourteenth Amendment right of pretrial detainees, like the Eighth Amendment right of convicted prisoners, requires that government officials not be deliberately indifferent to any serious medical needs of the detainee."  *Belcher v. Oliver*, 898 F.2d 32, 34 (4th Cir. 1990) (citing *Martin v. Gentile*, 849 F.2d 863, 871 (4th Cir.1988)).  The duty to attend to

7

prisoners' medical needs does not presuppose "that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Estelle v. Gamble,* 429 U.S. 97,105 (1976).  Instead, it is only when prison officials have exhibited "deliberate indifference" to a prisoner's "serious medical needs" that the Eighth Amendment is offended.  *Id.* at 104.  As such, "an inadvertent failure to provide adequate medical care" will not comprise an Eighth Amendment breach.  *Id.* at 105-106.

In order to state a claim, "[a] plaintiff must satisfy two elements . . . : he must show a serious medical need and he must prove the defendant's purposeful indifference thereto."  *Sires v. Berman*, 834 F.2d 9, 12 (1st Cir. 1987).  A medical need is "serious" if "it is diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would recognize the necessity for a doctor's attention."  *Gaudreault v. Municipality of Salem, Mass.,* 923 F.2d 203, 208 (1st Cir. 1990), *cert. denied,* 500 U.S. 956 (1991).  "It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment."  *Estelle*, 429 U.S. at 106.  Mere negligence or malpractice does not violate the Eighth Amendment.  *Id.*  Moreover, disagreements between an inmate and a physician over the inmate's proper medical care do not state a Section 1983 claim unless exceptional circumstances are alleged.  *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985).

Here, defendant Abney testified that the plaintiff did not request medical care from her after the incident, and she was not involved with the plaintiff's care after the incident (Abney aff. ¶ 17).  In his response to the motion for summary judgment and in his complaint, the plaintiff does not contend that he requested medical attention from defendant Abney. Further, if the plaintiff is trying to allege that other individuals denied him medical care after this incident, this would fail to state a claim against this defendant.  The plaintiff has presented no evidence that the named defendant was personally involved in his medical care.  Medical care at the GCDC is contracted out to a private party (Butler aff. ¶ 17). Further, the evidence does not show the elements necessary to establish a claim under a

8

supervisory theory. The doctrine of *respondeat superior* generally is inapplicable to Section 1983 suits. *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978); *Vinnedge v. Gibbs*, 550 F.2d 926, 928-29 (4th Cir. 1977). The plaintiff must establish three elements to hold a supervisor liable for a constitutional injury inflicted by a subordinate: (1) the supervisor had actual or constructive knowledge that a subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to people like the plaintiff; (2) the supervisor's response was so inadequate as to constitute deliberate indifference or tacit authorization of the subordinate's conduct; and (3) there is an "affirmative causal link" between the supervisor's inaction and the plaintiff's constitutional injury. *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir.), *cert. denied*, 513 U.S. 813 (1994). The plaintiff has failed to establish these elements.

Furthermore, Lieutenant Butler testified that when the plaintiff made a request for medical care in a grievance form, she personally contacted medical, who came to examine the plaintiff (Butler aff. ¶ 18). Medical found no problems with the plaintiff at that time. *Id.* The plaintiff was then seen in medical on several other occasions, and he never had any symptoms to match his complaints. *Id.* At most, the plaintiff has stated a claim that he does not agree with the medical care provided to him. However, a disagreement over medical care does not state a constitutional claim. *See Wright*, 766 F.2d at 849. As a result, even if this defendant was involved in the plaintiff's medical care, the plaintiff could not state a claim. Based upon the foregoing, the plaintiff's medical care claim fails.

***Qualified Immunity***

The defendant argues that, to the extent the plaintiff raises his claims against her in her individual capacity, she is entitled to qualified immunity as her conduct did not violate any clearly-established constitutional or statutory rights of which a reasonable person should have known. This court agrees. Qualified immunity protects government officials

performing discretionary functions from civil damage suits as long as the conduct in question does not "violate clearly established rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  This qualified immunity is lost if an official violates a constitutional or statutory right of the plaintiff that was clearly established at the time of the alleged violation so that an objectively reasonable official in the defendants' position would have known of it.  *Id.*

In addressing qualified immunity, the United States Supreme Court has held that "a court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all and, if so, proceed to determine whether that right was clearly established at the time of the alleged violation." *Wilson v. Layne*, 526 U.S. 603, 609 (1999); *see also Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000).  Further, the Supreme Court held that "[d]eciding the constitutional question before addressing the qualified immunity question also promotes clarity in the legal standards for official conduct, to the benefit of both the officers and the general public." *Wilson*, 526 U.S. at 609.  If the court first determines that no right has been violated, the inquiry ends there "because government officials cannot have known of a right that does not exist." *Porterfield v. Lott*, 156 F.3d 563, 567 (4th Cir. 1998).  The plaintiff has failed to demonstrate that the defendant violated any of his constitutional rights.  Therefore, the defendant is entitled to qualified immunity.

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, it is recommended that the defendant's motion for summary judgment (doc. 18) be granted.

December 19, 2008                                              s/William M. Catoe
Greenville, South Carolina                                 United States Magistrate Judge